**THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE TERRACES CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-CV-06028 |
| | ) | |
| | ) | |
| INSURANCE COMPANY OF GREATER NEW YORK, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, INSURANCE COMPANY OF GREATER NEW YORK. ("GNY"), by and through its attorneys, states as follows for its Memorandum of Law in support of its motion for summary judgment as to all claims of the Plaintiff, Terraces Condominium Association.

**INTRODUCTION**

In this first-party property insurance coverage action, Terraces Condomnium Association ("Terraces"), an Illinois not-for-profit corporation located in Downers Grove, DuPage County, seeks insurance coverage for a power outage that occurred on June 21, 2018 at the Terraces of Downers Grove apartment complex (the "Building"), of which Terraces is the governing body. On June 22, 2018, Terraces notified GNY of a claim for the costs associated with the power outage and the repair of the "fault" in the Building's electrical system located beneath a concrete parking garage (the "Claim"). GNY's adjuster, Paul Karnezis, met with David Watgen, the Property Manager at Terraces, and Matt Liberacki, the President of Midwest Property Services ("MPS"),

1

the contractor retained by Terraces to repair the fault. Paul Karnezis informed the other parties that to ascertain the extent of damage, if any, and determine the proper scope of repair, it would be necessary to excavate and visually inspect the underground electrical system. The only way to accomplish this was to excavate the cement overlaying the electrical system to expose the conduit and conductors for inspection. Terraces ignored this information and instead authorized MPS to replace the entire electrical system by installing new wiring along the garage ceiling out of the North building wall to a new CT cabinet ("above ground system"). The replacement was completed on or around August 28, 2018 and Terraces submitted the MPS invoices to GNY for the cost of the full replacement of the underground electrical system with the above ground system and the rental and maintenance of a generator, which together total $401,659.63. Terraces sought payment of this amount from GNY under the commercial property policy (the "Policy") issued to Terraces, contending that the electrical system replacement and generator costs were covered under the Policy. GNY denied Terraces' claim.

To trigger coverage, the Policy requires "direct physical loss or damage to covered property" from a "Covered Cause of Loss.".

GNY is entitled to summary judgment on three grounds. First, Terraces is unable to meet its burden of establishing that it sustained "direct physical loss or damage" to its underground electrical system. It is undisputed that the excavation of the cement overlaying the allegedly damaged electrical system was the only means of definitively establishing whether the electrical system sustained "direct physical loss or damage" for the purposes of Policy coverage. It is also undisputed that Terraces never performed the excavation, and that neither GNY nor Terraces was ever able to visually inspect the electrical conduits and wires to determine whether the electrical system sustained physical loss or damage.

Second, even assuming, *arguendo*, that Terraces can meet the burden of proving direct physical loss or damage, Terraces cannot establish the *extent* of that damage and, therefore, cannot meet its burden of proving its claim for full replacement of the underground electrical system under the Policy.

Third, Terraces' failure to comply with its duties under the Policy precludes recovery. Specifically, the Policy requires that, in the event of loss or damage to Covered Property, Terraces "permit [GNY] to inspect the property proving the loss or damage." Terraces admits that the only way to determine the extent of the damage or the cause of the damage is to excavate and remove the cement overlaying the electrical system responsible for the subject power loss. Despite GNY's repeated requests for Terraces to perform the excavation necessary for GNY to conduct its inspection, Terraces refused and demanded that *GNY* perform the excavation or advance additional funds for Terraces to do so. As a result, GNY was unable to perform the necessary visual inspection of the damage, depriving it of the information necessary to make a coverage determination, resulting in substantial prejudice to GNY.

The undisputed material facts, when compared to the provisions of the Policy and applicable case law, demonstrate that there is no possible grounds to claim coverage. In fact, Terraces made coverage *impossible* by submitting *no* proof of physical loss or damage, and by refusing GNY's request to inspect for damage.

Additionally, apart from its claim for breach of the Policy, Terraces alleges that GNY's coverage decision is unreasonable and that GNY's refusal to excavate Terraces' garage to reveal the alleged damage for which Terraces is seeking payment constitutes a breach of GNY's duty to investigate. On this basis, Terraces also asserts damages under Section 155 of the Illinois

Insurance Code.  That claim also fails, because there is no coverage available under the Policy and because GNY's denial of coverage was eminently reasonable in light if Terraces conduct. .

For these reasons and as further discussed herein, GNY respectfully requests that this Honorable Court determine, adjudge, and decree that there is no issue of material fact, and that GNY is entitled to judgment as a matter of law on all claims asserted by Terraces.

## **APPLICABLE STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56; *see also Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013).  The Court's objective is to determine if there is a "genuine issue for trial," meaning that the evidence presented requires submission to a jury, because a reasonable factfinder could return a verdict in favor of the non-moving party.  *See Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011).  If there is no specific evidentiary support that precludes judgment as a matter of law, summary judgment should be granted to the moving party.  *See Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

## **INCORPORATION OF STATEMENT OF MATERIAL FACTS**

In accordance with Local Rule 56.1, GNY has contemporaneously filed its Statement of Material Facts ("SMF").  Travelers incorporates by reference the Statement of Material Facts and the exhibits referenced therein.  References to "SMF" are to the numbered facts in this accompanying filing, and incorporate by reference the record citations of the cited facts.

## **ARGUMENT**

**Terraces is Unable To Meet Its Burden of Establishing Direct Physical Loss or Damage to Covered Property.**

4

Terraces' fundamental burden is to prove direct physical loss or damage to covered property during the policy period.  *See Wallis v. Country Mut. Ins. Co.*, 309 Ill. App. 3d 566, 57 (2nd Dist. 2000).  It is blackletter law that the insured must prove its claim falls within the scope of the insurance policy's coverage.  *Addison Ins. Co. v. Fay,* 232 Ill. 2d 446, 453, 905 N.E.2d 747, 752 (2009) ("This court has long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy."); *see also* S*t. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co*., 146 Ill. App. 3d 107, 109, 496 N.E.2d 1176, 1178 (1st Dist. 1986) ("[T]he existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy.").  Only once this burden is met does the burden shift to the insurer to show the applicability of a policy exclusion.  *Addison*, 232 Ill. 2d at 453-54 ("Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies.").

Here, the GNY Policy provides as follows:

A.    COVERAGE

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. Covered Property
> Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> 3. Covered Causes of Loss
> See Covered Causes of Loss Form
>
> CAUSES OF LOSS – SPECIAL FORM
>
> A. Covered Causes of Loss

> When Special is shown in the Declarations, Covered Causes of
> Loss means Risks Of Direct Physical Loss

*See* SMF 6; *see also* Policy, Exhibit 1.

Illinois law is clear that direct physical loss or damage to property must be of a tangible, physical nature, and it must be damage directly to the covered property. While the Policy does not define "physical loss" or "physical damage," courts in this District have held that plain wording of the phrase requires either a permanent disposition of the property due to a physical change ('loss'), or physical injury to the property requiring repair ('damage')." *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 2021 WL 633356, at *3 (N.D. Ill. 2021) (emphasis in original).

A review of a plethora of recent cases interpreting "physical loss or damage" in the wave of COVID-19 insurance claims and litigation, reveals that the majority of courts applying Illinois law, have agreed that "physical" loss or damage requires *tangible* or *concrete* injury. *Park Place Hospitality, LLC v. Continental Insurance Company*, No. 20 C 6403, 2021 WL 3549770, at *1 (N.D. Ill. Aug. 10, 2021) citing to *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 312 (2001) ("[t]he Illinois Supreme Court concluded that 'physical injury,' under its plain and ordinary meaning, 'unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension' and does not include 'intangible damage to property, such as economic loss'"; *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) ("[T]here must be some physicality to the loss or damage of property—e.g., a physical alteration, physical contamination, or physical destruction."); *Id.* ("The policy covers property. The scope-of-coverage provision builds on that clue, and requires a physical problem with a physical object.); *Image Dental, LLC v. Citizens Ins. Co. of Am.,* No. 20-CV-02759, 2021 WL 2399988, at *4 (N.D. Ill. June 11, 2021) ("The nature of the loss must be physical, not intangible, immaterial, economic, or regulatory."); *Sandy Point Dental, PC v. The Cincinnati Ins.*

*Co.,* 488 F. Supp. 3d 690, 693 (N.D. Ill. 2000) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.")

Taken together, under Illinois law and the terms and conditions of the Policy, mere loss of use is not enough. Terraces has the burden of proving tangible or concrete injury to establish coverage. It is undisputed, however, that Terraces provided no evidence of physical loss or damage, let alone evidence sufficient to meet its burden. In fact, all Terraces submitted to GNY were the invoices from the replacement of the underground electrical system with the above ground system and generator maintenance. These invoices are proof of nothing. All these invoices prove are that the underground system was replaced with an above ground system at considerable cost. This Court has determined, however that alleged repairs, without more, "are neither physical *losses* nor physical *damage.*" *G.O.A.T. Climb and Cryo v. Twin City Fire Ins. Co.*, 2021 WL 2853370, at *4 (N.D. Ill. 2021) (emphasis in original); *see also Crescent Plaza*, 2021 WL 633356, at *3 (rejecting argument that "repairs" to property constitute a direct physical loss).

Even in cases where the insured possesses proof of a loss event and resulting evidence of direct physical loss or damage, this Court has forbidden the insured from relying on the n assumption that other components subject to the same causal event, sustained the same or very similar damage. *Harbor House Condo. Ass'n v. Mass. Bay Ins. Co.*, 703 F. Supp. 1313 (N.D. Ill. 1988) *aff'd*, 915 F.2d 316 (7th Cir. 1990) ("*Harbor House*"). In *Harbor House*, the policyholder sought damages for repair of a heating system in a 278-unit condominium building after water pipes burst. The policyholder located and repaired leaking pipes in 23 of the units but then abandoned the system instead of conducting tests necessary to locate leaks in the

7

remaining units. In litigation, the policyholder sought to prove the extent of damage by extrapolating from the cost to repair the damage that had already been located and paid for by the insurer. The district court was not persuaded and granted summary judgment for the insurer on two grounds. First, the court held that without locating or visually inspecting leaks to the pipes in the remaining 255 units, the policyholder had failed to present evidence for a jury to conclude that a fortuitous event had caused damage to those pipes. The fact that freezing damage had occurred to pipes in the 23 units that had been tested was not enough to attribute damage from the same cause to the remaining units without evidence that the pipes in the 23 units were representative of the entire system.

Unlike the insured in *Harbor House*, Terraces here has absolutely no evidence of physical loss or damage from which to even extrapolate further physical loss or damage. Terraces instead expects the Court to rely entirely on a baseless assumption that an alleged "electrical failure" led to physical loss or damage that caused the building-wide power outage. Assuming *arguendo* that Terraces could prove that some "electrical failure" indeed occurred, and that following this electrical failure, the power outage occurred, there is no proof of what, if any, tangible injury to property occurred. As Terraces admits, the only means of accessing the allegedly damaged electrical system is by excavating and exposing the electrical system for physical, visual inspection. No alternative test to establish the existence of physical loss or damage exists. Even if it did, however, this Court dictates the means of proving physical loss or damage: the actual visual inspection or testing of each and every item of property that the Terraces claims is physically damaged. Without actual proof of any damage, the courts in this district have overwhelmingly held that the Plaintiff-insured cannot sustain its burden of proving direct physical loss or damage.

8

**A.    Terraces Is Unable to Meet its Burden of Proving the Extent of Any Damage Supporting is Claim for Full Replacement of the Underground Electrical System.**

It is not enough for  Terraces prove "physical loss or damage" under the Policy, the Policy and law require that the Terraces has the burden of proving the amount of its loss caused by physical loss or damage.  Terraces, however, cannot meet  this burden.

Here Terraces seeks full replacement of its underground electrical system with a new above-ground system at a cost of $196,376.

In Illinois, Terraces has the burden of proving its damages by a preponderance of the evidence. *Alover Distributors, Inc. v. Kroger Co.,* 513 F.2d 1137, 1141 (7th Cir.1975). "Proof that damages have been suffered must be made 'by credible evidence to a reasonable certainty' and the amount of the damages must be proven 'at least to a reasonable probability.'" *Custom Automated Machinery v. Penda Corp.,* 537 F.Supp. 77, 85 n.13 (N.D.Ill.1982) (citation omitted). The party seeking recovery must establish the nature and extent of damages with reasonable certainty.  *DMI, Inc. v. Country Mutual Ins. Co.,* 82 Ill.App.3d 113, 115, 37 Ill.Dec. 803, 805, 402 N.E.2d 805, 807 (3d Dist.1980). The trier of fact may not base a judgment on speculation or guesswork, but must make a reasonable estimate of damage based upon the relevant data.  *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 124 (1969). The evidence must also establish a reasonable basis for the jury to compute damages. *Beaton & Assoc., Ltd. v. Joslyn Mfg. & Supply Co.,* 159 Ill.App.3d 834, 845(1st Dist. 1987).

This requires that, even if Terraces can prove that a certain Loss Event caused *some* damage to the Property, it still must prove *that* damage caused the power outage and was responsible for the costs for which Terraces now seeks coverage. *Harbor House Condo. Ass'n supra*; *Sager Glove Corp. v. Aetna Ins. Co.*, 317 F.2d 439, 442-443 (7th Cir. 1963); *St. Michael's*

*Orthodox Cath. Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill. App. 3d 107, 111 (1986); *Patrick Schaumburg Auto., Inc.v. Hanover Ins. Co.*, 452 F. Supp. 2d 857 (N.D. Ill. 2006).

In *Harbor House*, the plaintiff-insured argued that it was only required to establish the *fact* of damage, and then the trier of fact is allowed to estimate the *extent* of that damage. This court was not persuaded by that argument and noted that "the admitted fact of damage does not suffice to establish the amount of damage." *Id.* at 1321 (citing *Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 553 (7th Cir. 1975)). Without physical evidence supporting the extent of damage to the pipes in the remaining 255 units, or even any competent evidence that repair of those pipes was necessary, the court held, as a matter of law, that the policyholder had failed to establish its loss to a reasonable degree of certainty. *Id.* The Seventh Circuit affirmed. *See* 915 F.2d 316.

Here, Terraces has no evidence of the extent of any actual damage to it underground electrical system. While Terraces contends that an electrical "fault" occurred, Terraces is not able to demonstrate that the "fault" constitutes damage or necessitates a full replacement of the electrical system. To meet its burden of proving the existence and extent of damage, Terraces would have to excavate and expose the entire underground electric system and demonstrate that the "fault" rendered the system unrepairable, and that replacement was the least costly option. Terraces, however, unilaterally decided to replace the entire electrical system above ground without excavating and investigating the reason for the "fault" and what damage, if any, it caused to the system. Without that evidence Terraces is not entitled to recover from GNY for the cost of replacing its electrical system.

**B.  Terraces Is Unable to Meet its Burden of Proving the Extent of Any Damage Supporting is Claim for Full Replacement of the Underground Electrical System.**

The Policy contains a Provision entitled "Duties In the Event of Loss or Damage" delineating the insured's duty in the event of a loss. The Provision states, in relevant part:

### 3. Duties In The Event Of Loss Or Damage

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

        ….

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred;

   ….

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

       Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   *See* SMF 6; *see also* Policy, Exhibit 1

This provision clearly requires that the policyholder provide the insurer with access to the damaged property such that the insurer can inspect the damage, perform testing and analysis and ultimately make a coverage determination. Plaintiff, however, repeatedly attempted to pass off its duties to GNY, demanding multiple times that *GNY* excavate the concrete on top of the electrical system in order to conduct the necessary physical examination of the electrical system. GNY refused on the basis that it did not have the obligation to find the loss and damage, if any. That duty rests with the Plaintiff-policyholder. In the pending litigation, Plaintiff once again shifts its responsibility to GNY, claiming that GNY's refusal to excavate constitutes breach of contract and a violation of Section 155. Based on the undisputed facts and applicable law, however, Plaintiff alone bears the authority and duty to excavate and provide GNY with access to the damaged property.

That said, the duty to provide GNY with access to the allegedly damaged property falls squarely within Plaintiff's contractual and common law duty to cooperate with an insurance carrier's loss investigation, which have long been recognized and enforced by courts. *See, e.g. Gipps Brewing Corp. v. Cent. Mfrs.' Mut. Ins. Co.*, 147 F.2d 6, 11 (7th Cir. 1945)

This Court has specifically opined on the importance of the insured's duties in the context of claim investigations. *ASTRA 524(g) Asbestos Trust v. Transport Ins. Co., No.* 09 C 458, 2011 U.S. Dist. LEXIS 110272 (N.D. Ill. Sept. 28, 2011), at *15 (emphasis in original) (citing *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178 (Ill. 1991 ("Any condition in the policy requiring cooperation on the part of the insured is one of great importance. . . . The basic purpose of a cooperation clause is to protect the insurer's interests and to prevent collusion between the insured and the injured party"); *Id.* at *18 (citing *Waste Mgmt.*, *supra*) ("Even were the express words 'duty to cooperate' omitted from the contract, such a duty could reasonably be inferred based merely on the principles of fairness and good faith.").

Although here, the alleged damage is located underground, the relative duties of the insurer and the insured remain the same. None of the Courts who have examined the "duty to cooperate" have found that the level of difficulty of performing the duty eradicates it or shifts it to the insured. If cooperation is difficult or costly, the insured must determine whether the value of its claim justifies the cost of cooperating with the insurer's investigation.

Plaintiff's claim for contractual and statutory damages also requires that GNY breached or violated its duty. Plaintiff contends that GNY's refusal to excavate breached its duty to conduct a reasonable investigation. According to established caselaw, however, GNY did not breach its duties. First, as discussed, the duty to make damage available for inspection, belongs to the

insured.  Here, that involves Plaintiff excavating the cement overtop the electrical system.  Without a duty, GNY could not have been in breach.

Second, whether or not the insurer's investigation was "reasonable" is a fact-specific inquiry which relies, in part, on whether the insured carried out its obligations.  In fact, courts have found that the extent to which the insured complies with its "duty to cooperate" affects how much protection it is afforded under the policy.  *See e.g.  Martinez v. Infinity Ins. Co*., 714 F. Supp. 2d 1057, 1061 (C.D. Cal. 2010) (noting that a requisite element of an insured's breach-of-contract claim against a carrier in a coverage action is the insured's own performance under the contract or excuse for non-performance thereunder).

. Under Illinois law, these duties are a condition precedent to recovery and compliance with such conditions are required by Illinois law.  *See Nat'l Fire & Marine Ins. Co. v. 3327 W. 47th Place, LLC*, No. 16-CV-11590, 2017 WL 5499154, at *4 (N.D. Ill. 2017) (recognizing that the Seventh Circuit has held, in analyzing insurance coverage, that a clear endorsement requiring a protective device or system is a condition precedent to coverage for certain losses and that if the insured fails to comply with the endorsement's requirements, there is no coverage under the insurance policy); *see West Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010) (Supreme Court recently reaffirmed that an "insured's breach of a notice clause in an insurance policy by failing to give reasonable notice will defeat the right of the insured to recover under the policy"); *see also Berglind v. Paintball Bus. Ass'n*, , 930 N.E.2d 1036, 1044 (Ill. App. Ct. 2010) ("notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's contractual duties").  While a policyholder"s flat refusal to cooperate with its insurer in connection with a claim can excuse the carrier's performance under the policy,

the insured's failure to provide all requested information about its claim can excuse the insurer's failure to conduct as in-depth of an investigation as might otherwise be expected.

In fact, in many jurisdictions, including Illinois, depending on the extent of Plaintiff's failure to cooperate, and the extent to which GNY was prejudiced or deprived of a valid coverage defense, Terraces may forfeit coverage altogether. *See, e.g.*, *Piser v. State Farm Mut. Auto. Ins. Co., 938 N.E.2d 640, 648* (Ill. App. Ct. 2010), petition for leave to appeal denied, 943 N.E.2d 1108 (Ill. 2011) (a defense under the contract exists where a "substantial breach of the cooperation clause that "substantially prejudices the insurer in defending the primary action"); *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co*., 379 F. Supp. 3d 687, 694 (N.D. Ill. 2019) citing *Kerr v. Ill. Cent. R.R. Co.*, 283 Ill. App. 3d 574, (1996) ("As the Illinois courts have made clear, the 'purpose of [duties to cooperate] in an insurance policy [are] to enable the insurer to conduct a timely and thorough investigation of the insured's claim."); *Id,.* citing *Pittway Corp. v. Am. Motorists Ins. Co.*, 56 Ill. App. 3d 338, 346, 370 N.E.2d 1271, 1277 (1977) ("The record before us establishes substantial prejudice as a matter of law since by the time American received notice of the first loss the damaged property had been scrapped making inspection or further investigation impossible in any reasonable sense."); *Belz*, 158 Cal. App. 4th at 625, 629 (holding that an insured;s breach of a cooperation clause may excuse performance if the insurer can show that it suffered prejudice andexplaining that to successfully assert the insured's breach of the cooperation as a defense to coverage, the insurer must show it has suffered "actual, substantial prejudice); *see also Martinez*, 343 S.W.3d at 930 ("[a]n insured's failure to cooperate will not operate to discharge the insurer's obligations under the policy unless the insurer is actually prejudiced or deprived of a valid defense by the actions of the insured.")

Here, Plaintiff's refusal to perform a relatively inexpensive excavation made it impossible for GNY to perform a physical examination of the electrical system. Further, as Plaintiff admits, apart from visually inspecting the electrical system, there is no alternative means of determining the cause of loss. Without being able to conduct even the most basic cause and origin investigation, GNY was not able to establish whether the reported fault is even damage to the electrical system or whether it was caused by an excluded cause of loss, such as wear and tear or arcing. Applying the Illinois standard to the present claim, Plaintiff's failure to cooperate substantially prejudiced GNY in defending the primary action, such that it void's GNY's contractual obligations.

**C.     GNY Is Entitled To Summary Judgment On Plaintiffs' Section 155 Claim Because It Is Dependent On The Breach Of Contract Claim and GNY's Investigation and Claims Handling were Reasonable.**

In order to recover under Section 155 an insured must succeed in establishing the insurer's breach of contract. *See Cramer v. Ins. Exchange Agency*, 174 Ill. 2d 513, 524 (1996). Because GNY is entitled to summary judgment on Plaintiff's breach of contract claim for the reasons set forth above, and Plaintiff's Section 155 claim is dependent on the breach of contract claim, GNY is also entitled to summary judgment on the Section 155 claim of the Complaint. *See Hoover v. Country Mut. Ins. Co.*, 2012 IL App (1st) 110939.

Even if this Court denied summary judgment on Plaintiff's breach of contract claim, however, summary judgment on the Section 155 claim should be sustained. Count II of Plaintiff's Complaint alleges that GNY engaged in an improper claims practice, specifically for failing to "properly investigate the claim" in violation of 215 ILCS 5/155. This Illinois statute provides " an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Dowding v. Nationwide Mut. Ins. Co.,* 490

F. Supp. 3d 1291, 1296 (N.D. Ill. 2020) quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (1996)). GNY's investigation, however, was not vexatious and unreasonable in light of Terraces' failure to perform its duties. Specifically, GNY was not able to conduct a visual inspection of the underground electrical system, but this was because Terraces refused to excavate the overlaying cement to make the electrical system accessible. GNY was not intentionally refusing to investigate the loss – in fact, much the opposite. GNY repeatedly informed Terraces that in order for GNY to inspect the fault in the electrical system, GNY would need to physically access the electrical wires and conduits. Further, after GNY denied the claim, it invited Terraces to submit any additional information or documentation that might provide some basis for coverage, and GNY reviewed Terraces second request for coverage, but ultimately found that Terraces failed to submit any additional or new information. In addition, when Terraces mentioned that a fire had taken place prior to the June 21, 2018 power outage, GNY asked Terraces and MPS personnel for evidence connecting the fire to the power outage, but Terraces did not possess any such evidence. In light of the foregoing, GNY is entitled to summary judgment on the Section 155 claim of the Complaint independent from this Court's breach of contract determination.

**CONCLUSION**

Wherefore, Defendant, Insurance Company of Greater New York, respectfully requests that this Honorable Court enter an order granting Defendant's Motion for Summary Judgment, entering judgment in Defendant's favor and against Plaintiff on Counts I and II of Plaintiff's Complaint and on Defendant's First Affirmative Defense, and granting any other and further relief it deems just and appropriate.

Respectfully submitted,

By:    /s/ Abigail L. James

Matthew S. Ponzi
Abigail L. James
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 N. LaSalle Street, Ste. 1400
Chicago, Illinois 60601 | (312) 863-5000
mponzi@fgppr.com | ajames@fgppr.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 19, 2021, the foregoing was served via CM/ECF, the

Court's electronic notification system, as follows:

Keith Jones

Keay & Costello, P.C.

128 S. Country Farm Road

Wheaton, Illinois 60187

keith@keaycostello.com


/s/ Abigail James

Abigail L. James, Esq,