# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE TERRACES CONDOMINIUM )
ASSOCIATION, an Illinois )
not-for-profit )
                   )
       Plaintiff, )
                   )     Case No. 19-CV-6028
       v. )
                   )     Judge John Robert Blakey
INSURANCE COMPANY OF )
GREATER NEW YORK, )
                   )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

This case involves an insurance dispute over Defendant Insurance Company of Greater New York's ("GNY") coverage obligations under an insurance policy it sold to Plaintiff, The Terraces Condominium Association ("Terraces") to insure an 8-story condominium in Downers Grove, Illinois. Terraces alleges that GNY breached the policy when it refused to cover Terraces' costs to replace the condominium's electrical system and rent a generator to provide temporary power. Terraces also alleges GNY breached its obligation to cover certain investigation costs and engaged in bad-faith claims handling that warrants attorneys' fees, costs, and penalties pursuant to § 155 of the Illinois Insurance Code, 215 ILCS 5/155. [1-1]. GNY now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, [57]. For the reasons stated below, the Court grants in part and denies in part GNY's motion [57].

## I.    Factual Record[1]

Terraces is a non-for-profit association and the governing body of an 8-story condominium in Downers Grove, Illinois. [69] ¶ 1. On August 28, 2017, GNY issued an "all risk" insurance policy to Terraces relating to the condominium ("Policy"). *Id*. ¶ 4.

On June 21, 2018, the condominium suffered a complete "power outage." *Id*. ¶ 8. The next day, Terraces filed a claim with GNY under the Policy relating to the power outage. *Id*. ¶ 9. GNY assigned a claims examiner, Deryk Martinez, to handle the claim; in turn, Martinez assigned an independent claims adjuster, Paul Karnezis, and contracted with an electrical engineer, Matthew Thurow, to investigate the claim. *Id*. ¶¶ 10–11.

On June 28, 2018, Thurow, along with the condominium's building manager, Terraces' general contractor, and a utility company representative, investigated the condominium's power supply issue. *Id*. ¶ 11. Thurow saw that the utility company, ComEd, supplied power to the condominium via a vault outside the building. *Id*. (pointing to an email from Thurow to Martinez, [60-3], which Terraces agrees reflects Thurow's findings). The power from ComEd's vault then fed into the condominium through three conductors; these conductors also attached to conduit wires that fed into the building's concrete walls. [60-3]. The conduit wires ran through the building's concrete walls down to a switchgear located in an electrical room in the condominium's ground-floor garage. *Id*. Thurow determined that a fault (*i.e.*

[1] The Court takes the following facts from Terraces' Response to GNY's Local Rule 56.1 Statement of Facts, [69], and GNY's Response to Terraces' Statement of Additional Facts, [87].

abnormal electrical current) occurred somewhere in the conduit wires encased in cement, which then caused the fuses in the ComEd vault to blow and the power to go out. *Id*. When he examined the conductors attached to the conduit, he saw some "evidence of fire/heat damage." *Id*. [87] ¶ 4. But he concluded that he could not determine the cause of the electrical fault, extent of the damage, or cost to fix the faulty wiring without tearing up the concrete that covered the wires. [60-3]; [87] ¶ 4. Thurow also told Martinez and Karnezis that it may be expensive to tear up the concrete because the conduit wires traveled a considerable distance; the concrete excavation could further damage the conduit wires; and even with the concrete removed, it may be difficult to find the fault's location or determine the cause of the faulty wires. [60-3].

Thurow also considered whether any other tests could help identify the cause. He agreed that a test known as a "Megohmmeter Test" could determine the "condition of the insulation on [the] conductors"—in other words, "whether or not the insulation is bad"—but it would not show "how the insulation became degraded or failed." [87] ¶ 5 (response). Terraces, on its own initiative, had someone conduct a Megohmmeter Test, which confirmed that some of the wiring under the cement did not work, but the test did not (and could not) determine the cause of the faulty wires. *Id*.

After Thurow's initial inspection, GNY did not investigate further. Instead, GNY told Terraces that it could not determine coverage unless Terraces excavated the cement so that GNY determine the cause of the electrical fault. [69] ¶ 12. Terraces asked its general contractor for a quote to remove the concrete, and its

contractor estimated $9,650. *Id.* ¶ 20. Based upon the record and the parties' pleadings, it appears that Terraces agreed to remove the cement; but it refused to *pay* to remove the cement. [87] ¶ 8. Instead, Terraces insisted that GNY pay to remove it, since GNY requested its removal as part of its claim investigation. *Id.* ¶ 9. GNY, however, refused, stating that Terraces must bear the cost to excavate the concrete. *Id.*; [60-5].

In the end, rather than pay to excavate the cement to investigate the cause of the loss and repair the existing conduit wires, Terraces abandoned the old electrical wiring system and replaced it with a wiring system that ran on the ceiling of the condominium's garage. [69] ¶¶ 13–15. The replacement wiring system cost $196,376. *Id.* ¶ 15. In addition, while GNY investigated and until Terraces repaired the condominium's electrical system, Terraces temporarily powered the building with a generator that cost $205,283.63 to rent and maintain. *Id.* ¶ 15. After it replaced the wiring with the overhead system, it submitted a reimbursement request to GNY for $401,659.63 (the cost of the new system plus the generator rental). *Id.* ¶ 17. On November 5, 2018, GNY denied the claim, stating that based on the "information obtained, we have not been presented with any evidence of direct physical loss or damage to your building from the outage or from a covered cause of loss." *Id.*

In response, Terraces filed this suit. It alleges that GNY improperly denied its claim and is obligated to pay the $401,659.63 amount. It also alleges that GNY had a duty under the Policy to cover all reasonable expenses associated with claims investigations and it breached that duty by refusing to cover the cost to excavate the

cement. [1-1] ¶ 28. Finally, Terraces alleges that GNY's refusal to pay the claim and cover the excavation costs, and failure to sufficiently investigate Terraces' claim constitute "unreasonable and vexatious conduct" and entitles it to attorneys' fees, costs and penalties pursuant to 215 ILCS 5/155. [1-1] at 8.

GNY now moves for summary judgment. [57]. First, it argues that Terraces cannot make out a *prima facie* case for coverage because there exists no evidence that the condominium suffered any covered "physical loss or damage." *Id*. at 2. Second, GNY contends that even if Terraces can establish a "loss," it cannot establish the extent of the damages associated with the loss and therefore cannot establish it is entitled to the damages it seeks. *Id*. at 3. Third, GNY argues that, under the Policy and common law, Terraces had the duty to excavate the cement at its own cost. GNY argues that Terraces breached this duty, which voids GNY's contractual obligations. *Id*. Finally, GNY argues that because it did not breach the Policy and had a good-faith basis for denying Terraces' claim, Terraces' claim for attorneys' fees, costs and penalties pursuant to 215 ILCS 5/155 fails as a matter of law.

## II.    LEGAL STANDARD

Summary judgment is proper where there exists "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the

burden of establishing that there exists no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, the Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). If the moving party meets its initial burden, then the non-moving party bears the burden of identifying the evidence creating a material issue of fact. *See LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.   ANALYSIS

### A.   Whether Terraces Has Met Its *Prima Facie* Burden

The Policy at issue provides that GNY "will pay direct physical loss or damage to Covered Property" at the premises "caused by or resulting from any Covered Cause of Loss." [69] ¶ 6; [69-1]. The Policy defines "Covered Causes of Loss" as "Risks of Direct Physical Loss."[2] [69-1] at 123. This type of policy is known as an "all-risk" policy, which is a policy that covers all "fortuitous" losses except for those specifically

---

[2] The Policy does not, in turn, further define "Risks of Direct Physical Loss."

excluded in the policy language. Under Illinois law—which the parties agree controls here—to withstand an insurer's motion for summary judgment on an insured's coverage claim under an all-risk policy, the insured must establish a *prima facie* case that: (1) a loss occurred; (2) the loss resulted from a fortuitous event; and (3) the policy was in effect at the time of the loss. *See Gulino v. Econ. Fire & Cas. Co.*, 971 N.E.2d 522, 527 (Ill. App. Ct. 2012); *Harbor House Condominium Ass'n. v. Mass. Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990). If the insured establishes its *prima facie* case, then the burden shifts to the insurer "to affirmatively demonstrate that the loss resulted from a peril expressly excluded from coverage." *Gulino*, 971 N.E.2d at 527.

GNY argues that Terraces cannot meet the first or second element of its *prima facie* burden. As to the first element, GNY argues that Terraces cannot establish a "loss" because it cannot show that its electrical system sustained "direct physical loss or damage." [57] at 2, 5, 8. Under Illinois law, to establish direct physical loss or damage, the insured must show "tangible as opposed to intangible loss or damage." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.,* 932 F.3d 1035, 1040 (7th Cir. 2019) (citing *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 746–47, 746 (7th Cir. 2015)). GNY contends that Terraces only established that the condominium suffered a "power outage"; it insists that a power outage, without more, does not constitute tangible loss or damage. *Id*. at 8.

The Court does not need to decide whether a "power outage," without more, constitutes a "tangible loss" because the record shows more than just a power outage. As the record shows, GNY's electrical engineer consultant, Matt Thurow, agreed that

some portion of the condominium's conduit wires suffered damage. This, he concluded, caused an electrical fault, which caused ComEd's fuses to blow, which in turn caused the power outage. [60-3]. GNY does not dispute Thurow's opinions (in fact, it relies on his opinions to justify denying Terraces' claim and in seeking summary judgment). [69] ¶¶ 11–12; [87] ¶¶ 3–5 (responses).[3] Further, the record shows that Terraces (at its own expense), conducted a Megohmmeter Test. [87] ¶ 5. As Thurow opined, this test confirms whether the "insulation is bad," and Terraces' test showed that some of the buried wires no longer functioned. *Id.*

While Terraces has not established exactly which portions of the conduit wire suffered damage or what caused the damage, it has established that some conduit wire buried under the cement suffered damage. GNY fails to demonstrate how conduit wire damage does not constitute "physical" (*i.e.*, "tangible") loss or damage. And GNY does not argue that the Policy per se excludes electrical wire damage from the definition of "Covered Property." Accordingly, the record confirms that Terraces established a "loss" sufficient to satisfy the first element of its *prima facie* burden.

On reply, GNY also argues that Terraces failed to establish the *prima facie* element as to causation. *See* [85] at 7–13.[4] Some of GNY's arguments imply that Terraces must establish the *specific* cause of the conduit wire damage. *See, e.g.,* [87] at 16 (reiterating that Terraces must "demonstrate the cause of why the electrical

---

[3] Although GNY disputes that it "knew that the electrical system was damaged," [87] ¶ 7 (response), it agrees that "the electrical wires [] were nonfunctional." *Id.* ¶ 2.

[4] Even though GNY did not address the "fortuitous" requirement until its reply, the Court still considers the issue because Terraces, as the insured, bears the burden to establish this element as part of its *prima facie* case. *See Gulino*, 971 N.E.2d at 527.

system was nonfunctional."). Terraces, however, has no such burden. Illinois law does not require an insured to prove the specific cause of a loss to recover under an all-risk policy. *See Mattis v. State Farm Fire and Cas. Co.*, 454 N.E.2d 1156, 1164 (Ill. App. Ct. 1983) (summarizing Illinois' law and commenting it remains consistent with other jurisdictions). Instead, an insured must establish that a "fortuitous event" caused the loss or damage. *Id.* "'Fortuitous' means happening by chance or accident or occurring unexpectedly or without known cause." *McGrath v. Am. Fam. Mut. Ins. Co.*, No. 07 C 1519, 2008 WL 4531373, at *5 (N.D. Ill. Apr. 29, 2008). Put differently, a "fortuitous event" constitutes "an event which so far as the parties to the contract *are aware,* is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event provided that the fact is unknown to the parties." *Id.* (emphasis in original) (quoting *Restatement of Contracts § 219,* Comment a 1932)); *see also Johnson Press of Am., Inc. v. N. Ins. Co. of NY*, 791 N.E.2d 1291, 1298 (Ill. App. Ct. 2003) (same). Courts determine as a matter of law whether an event qualifies as fortuitous. *See Mattis*, 454 N.E.2d at 1163.

GNY complains that Terraces has not shown a "fortuitous" loss because it does not present evidence that *any* event occurred, let alone that the event was "fortuitous." [84] at 11–13. Terraces insists, however, that it established a "fortuitous loss" because the cause of the electrical damage remains unknown. [68] at 7–8.

As other courts have noted, "the insured's burden of showing a fortuitous loss is 'not a particularly onerous one.'" *Great Lakes Reinsurance (UK) PLC v. Kan-Do,*

*Inc.*, 639 Fed. Appx. 599, 601 (11th Cir. 2016) (quoting *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 430 (5th Cir. 1980)).  Further, as Terraces points out, [68] at 7–8, the definition for "fortuitous" explicitly encompasses "unknown causes," *McGrath*, 2008 WL 4531373, at *5.  If a cause remains unknown, then an insured cannot be faulted for failing to establish how the loss occurred.[5]  A survey of other cases confirms that courts find a fortuitous event where the parties cannot determine how a loss occurred.  *See, e.g., Petroterminal De Panama, S.A., v. QBE-Marine & Specialty Syndicate 1036*, 14-cv-8614, 2017 WL 253066, at *3 (S.D.N.Y. Jan. 19, 2017) (finding insured met its burden to show a fortuitous loss where a shipping dock's pile fell over and the parties could not determine why it fell); *Kan-Do, Inc.*, 639 Fed. Appx. at 600–02 (finding a fortuitous loss occurred when an insured ship sank after a fuse blew and caused a pump to fail, but the cause of the blown fuse was unknown).

On reply, GNY also alludes to a possible coverage exclusion when it notes that the condominium's electrical system was over 50 years old and argues that the Policy is not a "warranty or maintenance contract" (the Policy excludes coverage for losses caused by "normal wear and tear").  [84] at 13.  But the record includes no evidence about the age of the system and whether it had exceeded its useful life.  Further, in moving for summary judgment, GNY explicitly disavows reliance on any exclusion defense at this stage.  [84] at 13 ("This case is not about the application of an

---

[5] Of course, there remains the dispute over whether Terraces had an obligation to excavate the cement over the wires, which may have revealed the cause of the wire damage. The Court later addresses this dispute.

exclusion."). Based upon the current record, the cause of the electrical wire damage remains unknown, and the cause appears fortuitous. Accordingly, the record confirms that Terraces satisfied its *prima facie* burden.

## B. Damages

GNY next argues that, even if Terraces established its *prima facie* case, it cannot establish the extent of the physical damage and therefore cannot prove its damages. GNY's damages argument fares better.

Under Illinois law, even if an insured makes out a *prima facie* case for coverage, it must also "prove the nature, extent or amount of [its] loss to a reasonable degree of certainty." *Harbor House Condo. Ass'n v. Mass. Bay. Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990). As GNY correct notes, the Seventh Circuit's decision in *Harbor House* is instructive.

In *Harbor House*, an insured sought recovery under an all-risk policy for the cost to replace a condominium's hot water heating system after several of the system's pipes froze, cracked, and burst. *Id*. at 317. Originally, the insured had planned to repair the existing system by repairing all the damaged pipes. After repairing a few pipes, however, it encountered issues finding the other leaks. To find the leaks, it needed to pressure test the pipes using the pipes' isolation valves; but it discovered the isolation valves did not function properly. *Id*. Rather than replace the valves, the insured chose to abandon the heating system and install an alternative system. *Id*. at 318. The insured submitted an insurance claim for the new alternative system and the insurer denied it. After the district court granted summary judgment to the

11

insurer, the insured appealed. The Seventh Circuit affirmed, finding that the insured "failed to provide any evidence of the extent or amount of [the additional damage to the pipes] from which a jury could reasonably calculate damages." *Id.* at 319. It noted that, while it is true that the plaintiffs "need not prove their damages to mathematical certainty, neither can they rely on mere speculation or conjecture." *Id.* It found that because the insured could not establish the extent of the damage to the additional pipes, the full replacement costs constituted only speculation and conjecture. *Id.*

Terraces faces a similar problem here. Because the conduit wiring has not been unearthed, Terraces cannot establish the extent of the wire damage. Accordingly, it can only speculate as to the cost to repair the damage. Like the Seventh Circuit found in *Harbor House*, Terraces has "clearly failed to prove the extent of the damage suffered or the amount of [its] damages" *id.* at 320, as it relates to the cost to repair or replace the damaged wires.

Terraces, however, also submitted a clam for $205,283.63 for the cost to rent and maintain the generator. [69] ¶ 16. Unlike the cost to repair the wires, Terraces has offered undisputed evidence of the damages associated with the generator rental (namely the generator rental invoices). *Id.* GNY does not argue that the Policy per se excludes generator rental from coverage. Accordingly, even though GNY's damages argument succeeds as to the wire damage costs, it fails as to the generator rental costs.

## C.	Failure to Excavate the Conduit Wiring

Next, GNY argues that it is entitled to summary judgment on all of Terraces'
claims because Terraces breached the Policy and violated its common law duty to
cooperate when it refused to excavate the cement covering the conduit wires. [57] at
11–15.  According to GNY, this voids any contractual duties GNY may possess.  As
set out below, GNY's arguments fail based on the current record.

### 1.	Whether Terraces Violated a Contractual Obligation as a Matter of Law by Refusing to Pay to Excavate the Cement

GNY argues that the following Policy provision obligated Terraces to excavate
the cement at its own cost: "[a]s often as may be reasonably required, [the insured
must] permit us to inspect the property proving the loss or damage and examine your
books and records."  [57] (citing [60] ¶ 6 and [60-1]).  Terraces counters that this
provision only required Terraces to permit access to the premises, which it did.
Terraces further contends it not only allowed GNY access to excavate the cement, but
also "demanded" that GNY do the excavation (at GNY's cost).  [68] at 12.

Clearly, the plain language of the provision contemplates more than just
permitting access to the premises, because it refers to "the property proving the loss
or damage."  As Terraces points out, however, it did more than just give GNY access
to the premises.  It consented to have the cement excavated; it just did not consent to
bear the cost to do so.  The provision that GNY cites remains silent as to who must
bear costs associated with gaining "access" to property proving the loss or damage.
To the extent this silence creates an ambiguity in the contract, the provision must

"be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010).

Another provision of the Policy further undermines GNY's position. Section 1(d) of the Policy's Commercial General Liability Coverage Form, under "Supplemental Payments – Coverages A and B,"[6] states that: "[The Insurer] will pay, with respect to any claim we investigate or settle. . .(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit'. . ." [60-1] at 143. Notably, Terraces' Complaint brings a distinct breach of contract claim against GNY for violating § 1(d). [1-1] ¶¶ 28, 29. GNY's summary judgment motion, however, does not address or even acknowledge § 1(d) or Terraces' claim. [57]; [84]. And confoundingly, Terraces' response also fails to address it. [68]. Despite the parties' silence in their summary judgment briefs, this Court "must construe the policy as a whole." *Pekins Ins.*, 930 N.E.2d at 1017. Section 1(d) remains relevant (and indeed, it may later prove potentially dispositive regarding which party had the duty to bear the cost to remove the cement). Nevertheless, at this stage and based upon this record, GNY fails to demonstrate that Terraces breached its contractual duty when it refused to pay to excavate the cement. Even if the provision cited by GNY required Terraces to excavate the cement, it did not explicitly require Terraces to bear the cost to do so. Accordingly, GNY has not established as a matter of law that Terraces violated a contractual duty.

---

[6] "Coverage A" references the Policy's coverage for "Bodily Injury and Property Damage." and "Coverage B" references the Policy's coverage for "Personal and Advertising Liability." [60-1] at 133.

### 2. Whether Terraces Violated the Common Law Duty to Cooperate

GNY also insists that Terraces violated a common law duty to cooperate. [57] at 12. According to GNY, this common law duty governs even "if cooperation is difficult or costly." *Id.* Specifically, GNY cites to a string of cases regarding the common law duty to cooperate in the insurance context. *Id.*

Each of these cases, however, deals with *contractual* duties of cooperation. *See ATRA 524(g) Asbestos Trust v. Transport Ins. Co.*, No. 09-C-458, 2011 WL 4501375, at *5 (N.D. Ill. Sept. 28, 2011) (discussing clauses in the policy at issue that "trigger a cooperation obligation"); *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991) ("Any condition in the policy requiring cooperation on the part of the insured is one of great importance"). Even though the *ATRA 524(g) Asbestos Trust* case states that "even if the express words 'duty to cooperate' is omitted from the contract, such a duty could reasonably be inferred based merely on principles of fairness and good faith," 2011 WL 4501375, at *5 (quoting *Waste Mgmt.*, 579 N.E.2d at 332), there is no need here to make such an inference where the Policy itself includes express duties to cooperate. GNY does not identify any case that imposed more onerous common law duties to cooperate than those explicitly enumerated in a Policy. Nor does it identify a case that imposes upon the insured a common law duty to bear all costs associated with cooperation. And GNY fails to reconcile its position with the Policy's § 1(d), which states that GNY will cover "[a]ll reasonable expenses incurred by the insured at [the insurer's] request to assist [the insurer] in the investigation." [60-1] at 143. Overall, GNY fails to establish that there exists a

common law duty to cooperate beyond that agreed to by the parties, or one that otherwise obligated Terraces to bear the cost to remove the cement. Accordingly, GNY cannot avoid its contractual obligations on this basis.

**D.      Summary Judgment as to Terraces' Claim Under 215 ILCS 5/155.**

Finally, GNY seeks summary judgment on Terraces' claim for attorneys' fees and increased damages pursuant to § 155 of the Illinois Insurance Code, 215 ILCS 5/155. [57] at 15. Section 155 allows a court to award reasonable attorneys' fees, plus a penalty, if it finds that an insurance company took an action or delay that was "vexatious and unreasonable." 215 ILCS 5/155.

First, GNY maintains that Terraces' § 155 claim fails as a matter of law because an insured must first establish a policy breach before it can invoke § 155. [57] at 15. As set out above, however, GNY failed to establish as a matter of law that it did not, in fact, breach the policy.

Second, GNY insists that Terraces' § 155 claim fails because GNY's own conduct "was not vexatious and unreasonable in light of [Plaintiff's] failure to perform its duties." [57] at 16. In determining whether an insurer engaged in vexatious or unreasonable conduct under § 155, a court must consider the totality of circumstances. *See Spearman Indust., Inc. v. St. Paul Fire and Marine Ins. Co.*, 138 F. Supp. 2d 108, 1102 (N.D. Ill. 2001). An insurer's conduct is not "vexatious or unreasonable if (1) there is a bona fide dispute concerning the scope and application of insurance coverage, (2) the insurer asserts a legitimate policy defense, (3) the claim presents a genuine legal or factual issue regarding coverage, or (4) the insurer takes

a reasonable legal position on an unsettled issue of law." *Id*. (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). The decision whether an insurer's conduct "is vexatious and unreasonable is within the trial court's discretion." *Sarac v. Minnesota Life Ins. Co.*, 529 F. Supp. 2d 924 (N.D. Ill. 2007) (citing *Am. Srvc. Ins. Co. v. Passarelli*, 752 N.E.2d 635, 639 (Ill. App. Ct. 2001)

As discussed above, the record does not show that Terraces failed to perform its duties to cooperate. Rather, if anything, the record indicates that GNY may have been required to cover the cement excavation costs pursuant to § 1(d) of the Policy's Commercial General Liability Coverage Form. Because the parties' summary judgment papers fail to address Terraces' breach of contract claim based on § 1(d), however, the discrete issue is not ripe for determination. Accordingly, based on the current record, the Court cannot yet determine whether GNY engaged in "vexatious and unreasonable" conduct when it stopped investigating and insisted Terraces pay to excavate the cement. But it may have. *See, e.g., Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (holding that "an insurer who misrepresents facts, denies coverage after refusing to conduct an adequate investigation, and bases its decision upon speculation or incomplete information could be considered to have acted without reasonable cause."). GNY is not entitled to summary judgment on the § 155 claim.

## I. CONCLUSION

For the reasons set forth above, this Court grants GNY's motion for summary judgment [57] only as to Terraces' coverage claim for $196,376 to replace the electrical system. It denies the Motion [57] in all other respects.

Dated: March 22, 2022

Entered:

John Robert Blakey
United States District Judge